I .PER CURIAM.
This disciplinary proceeding arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Robert E. Patrick.
PRIOR DISCIPLINARY HISTORY
On July 9, 1999, we disbarred respondent from the practice of law for conduct unrelated to the instant proceeding. In re: Patrick, 99-0771 (La.7/2/99), 738 So.2d 539. Respondent’s misconduct in that case included commingling and conversion of client funds and submission of false evidence in an attempt to cover up his wrongdoing.
In addition to respondent’s 1999 disbarment, we previously imposed a deferred ninety day suspension on respondent for providing inaccurate information to clients and courts in two criminal matters. In re: Patrick, 95-1621 (La.9/15/95), 660 So.2d 433.
The disciplinary board has admonished respondent on two prior occasions. In 1995, the disciplinary board admonished respondent for incompetence, failure to communicate and assessing an improper fee. In 1991, the board admonished him for improper use of a client trust account.
I ¡.UNDERLYING FACTS

Count I

In September 1996, Quincy M. Edwards retained respondent to represent him in a personal injury case against State Farm Insurance Company. Shortly thereafter, respondent settled the matter on behalf of his client. On October 7,1996, State Farm issued a settlement check in the amount of $10,000, made payable to respondent, Mr. Edwards and Mr. Edwards’ previous attorney in the matter, Eldon Guillory. Subsequently, respondent signed Mr. Guil-lory’s name to the check, without Mr. Guil-lory’s knowledge or consent, and negotiated it. Respondent kept the entirety of the proceeds, and never notified Mr. Guillory of the settlement nor attempted to negotiate a division of fees with him.

Count II

In connection with the Edwards litigation (which is the subject of Count I), Mr. Edwards had incurred medical bills in the amount of $3,400 for treatment provided to him by the England-Masse Chiropractic Clinic (“England-Masse”). Respondent was put on notice that England-Masse maintained a privilege or lien on the settlement proceeds. However, after the settlement was perfected, respondent converted these funds to his own use. England-Masse sent numerous requests for payment to respondent, but respondent failed or refused to remit the funds. As a result, England-Masse filed suit against respondent to obtain a monetary judgment for the amount of the hen.

Count III

In late 1998, Keatha Poullard retained respondent to represent her in a personal injury matter. Subsequently, respondent settled the case for $3,200. He forged Ms. | aPoullard’s name to the settlement check and negotiated it, without her knowledge and consent. When the third party health care providers demanded payment from Ms. Poullard, respondent advised her to tell them her treating physicians had agreed to “write off the bill,” which respondent knew was false. Moreover, re *806 spondent did not provide his client with the correct portion of her interest in the settlement, and did not provide his client with an accounting or disbursement sheet.[1] Subsequently, Ms. Poullard filed suit against respondent. The court determined respondent had converted her funds.

Count IV

On October 31, 1997, Creighton M. Moss, an inmate, retained respondent for the purpose of obtaining a transfer to another correctional facility. Mr. Moss paid respondent the sum of $10,000. Subsequently, respondent performed little or no services on behalf of Mr. Moss and refused to communicate with him regarding the status of the legal matter. Respondent failed to provide an accounting, return his client’s file or refund the unearned portion of the fee, despite repeated requests.

Count V.

On January 22, 1998, David and Teresa Joshlin retained respondent to represent them in connection with an injury that their son had suffered at school on May 19, 1997. Aware the prescriptive date was approaching, Mrs. Joshlin repeatedly called respondent during the months of March, April and May of 1998. Respondent failed to return her calls.
| DISCIPLINARY PROCEEDINGS

Interim Suspension

After receiving complaints against respondent, the ODC filed a motion in this court seeking to place respondent on immediate interim suspension for threat of harm pursuant to Supreme Court Rule XIX, § 19(B). This court ordered respondent to show cause before a hearing committee why he should not be placed on interim suspension. After a hearing, the committee concluded respondent posed a “clear and present danger” to the public while he remained in the practice of law, and recommended he be placed on immediate interim suspension. On March 24,1999, this court placed respondent on interim suspension. In re: Patrick, 99-0410 (La.3/24/99), 733 So.2d 1180.

Formal Charges

After investigation, the ODC filed formal charges against respondent.[2] The charges alleged violations of the following provisions of the Rules of Professional Conduct: Rules 1.1 (incompetence), 1.4 (failure to communicate), 1.8(h) (making an unlawful agreement to prospectively limit the lawyer’s liability to a client for malpractice in the absence of advising client to seek independent legal advice), 1.15(b) (failure to promptly deliver funds or property owed to a client or third party and failure to render a full accounting upon request), 1.15(c) (failure to place property subject to a dispute with another party in trust), 1.16(d) (failure to protect client interests upon termination of representation), 8.4(b) (commission of a criminal act adversely reflecting on a lawyer’s honesty, trustworthiness, or fitness as a lawyer), | k8.4(c) (engaging in conduct involving deceit, dishonesty, fraud, or misrepresentation) and 8.4(d) (conduct prejudicial to the administration of justice).
*807 Respondent failed to file an answer to the formal charges. Accordingly, no formal hearing was conducted, and the matter was submitted to the hearing committee on documentary evidence.

Hearing Committee Recommendation

The committee found that the allegations against respondent were proven by the ODC by clear and convincing evidence, and were supported by the documentary evidence. It determined respondent intentionally violated duties owed as a professional to his clients, to the public and to the legal system, resulting in actual injury to his clients.
The committee found no mitigating factors. As aggravating factors, it recognized the presence of prior disciplinary offenses, dishonest or selfish motive, pattern of misconduct, multiple offenses, refusal to acknowledge wrongful conduct, substantial experience in the practice of law (admitted in 1983) and indifference to making restitution.
Considering these factors, the committee found imposition of disbarment to be appropriate under the facts. Noting respondent is currently disbarred from the practice of law, the committee recommended respondent be disbarred again and not eligible to seek reinstatement until five years from the order imposed in this matter.

Disciplinary Board Recommendation

The disciplinary board adopted the findings and recommendation of the hearing committee in all respects. The board found this court has consistently disbarred | (¡attorneys who engaged in misconduct similar to that in the instant case. Finding no reason to deviate from this sanction, the board recommended respondent be disbarred.
Neither respondent nor the ODC filed an objection in this court to the recommendation of the disciplinary board, which was filed in this court on May 15, 2001. In light of the egregious facts of this case, we deferred action on the case pending our consideration of a rule relating to permanent disbarment
DISCUSSION
- On August 1, 2001, after a lengthy period of study and public comment, this court adopted amendments to Supreme Court Rule XIX, § 10[3] and § 24[4] to provide for the sanction of permanent disbarment. On September 13, 2001, we ordered respondent and the ODC to brief the issue of whether permanent disbarment should be *808 imposed in this matter.[5] The order further provided that respondent could request oral argument in his brief, and that if such a request was made, the case would be |7docketed; otherwise, the matter would be considered only on the briefs. Respondent did not file a brief.
However, on October 3, 2001, two attorneys potentially facing permanent disbarment filed a “Motion for Leave to File Amicus Curiae Brief, for Oral Argument, and to Participate in Oral Argument.” The amici asserted that they are in a similar posture to respondent as their misconduct occurred prior to August 1, 2001, but the ODC will be seeking to permanently disbar them.
Because of the unusual issues presented in this case, we permitted the amici to file briefs and participate in oral argument. At oral argument, the amici suggested that the permanent disbarment rules could not operate retroactively because to do so would deprive the respondent-attorney of the right to seek readmission, a right granted to him at the time of the underlying misconduct. In opposition, the ODC argued that this court always had discretion to foreclose a disbarred attorney from seeking readmission, and contended the rule changes were merely guidelines by which the court will exercise its discretion and authority.
Having considered the record of the instant proceeding in light of the well-presented arguments of the amici and the ODC, we now conclude that we need not resolve the issue of retroactivity of the permanent-disbarment rules in the context of the present facts.
Our review of the record in this case reveals the misconduct in the instant case occurred within the same time frame as the misconduct which formed the basis for respondent’s prior disbarment.[6] In Louisiana State Bar Ass’n v. Chatelain, 573 So.2d 470 (La.1991), we observed that when the underlying conduct occurs within the same period as the misconduct forming the basis for a previous disbarment, the | ^discipline imposed should be determined as if both proceedings were before the court simultaneously. Applying this procedure in Chatelain, we declined to extend the minimum period for readmission. Instead, we adjudged the respondent guilty of additional violations whieh were added to his record for consideration in the event he applied for readmission after becoming eligible to do so.
In determining an appropriate sanction in the instant case, we believe the approach of Chatelain is instructive. Accordingly, our determination of a sanction will be based upon the appropriate sanction we would have imposed if these charges had been before the court at the same time as the charges in respondent’s previous disciplinary proceedings.[7]
Disbarment is clearly the appropriate penalty for respondent’s action in the in *809 stant case. His actions were knowing and intentional, resulting in potential and actual harm to his clients and the legal profession. He has converted a substantial sum of funds owed to Mr. Guillory, England-Masse and Ms. Poullard, as well as Mr. Moss, who was incarcerated at the time. England-Masse and Ms. Poullard had to undergo inconvenience and expense to obtain monetary judgments against respondent for his professional misconduct.
The disciplinary board did not identify any mitigating factors, and we are unable to discern any from the record. By contrast, significant aggravating factors are present, including respondent’s substantial experience in the practice of law, the presence of multiple offenses and his indifference to making restitution.
Had the instant charges been filed simultaneously with those charges forming the basis of respondent’s earlier disbarment, they would have only reinforced our view 19that respondent lacks the moral fitness to practice law and must be disbarred, both as a sanction for his misconduct and to protect the public. Therefore, as in Chatelain, we will adjudge respondent guilty of additional violations which warrant disbarment and which will be added to his record for consideration in the event he applies for readmission after becoming eligible to do so. We further emphasize that although respondent may have a procedural right to apply for readmission, this court retains absolute discretion to grant or deny such an application. In light of respondent’s lengthy history of egregious misconduct, this court will carefully scrutinize any application for readmission with a critical eye.
In sum, without passing on the question of whether we could apply the permanent disbarment rules to this case, we elect in our discretion to resolve this ease under the principles set forth in Chatelain. Accordingly, respondent is adjudged guilty of additional violations which warrant disbarment and which will be added to his record for consideration in the event he applies for readmission after becoming eligible to do so.
DECREE
For the reasons assigned, respondent, Robert E. Patrick, is adjudged guilty of additional violations which warrant disbarment and which will be added to his record for consideration in the event he applies for readmission after becoming eligible to do so. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. Initially, respondent paid Ms. Poullard $300 as her portion of proceeds from the settlement. Later, when she went to his office to find out why her medical expenses had not been satisfied, respondent issued her a $215.06 personal check with the condition that she promise to testify on his behalf in the event her medical provider sued him.

. The formal charges initially involved a sixth count of misconduct. The hearing committee dismissed the charge, finding insufficient evidence to support the charge, and the disciplinary board affirmed the dismissal. The ODC did not object to the dismissal. Accord.-ingly, we will not address this charge.

. Supreme Court Rule XIX, § 10(A) was amended to add the highlighted language:
(1) Disbarment by the court. In any order or judgment of the court in which a lawyer is disbarred, the court retains the discretion to permanently disbar the lawyer and permanently prohibit any such lawyer from being readmitted to the practice of law.

. Supreme Court Rule XIX, § 24(A) was amended to add the highlighted language:
A disbarred lawyer or a suspended lawyer who has served a suspension period of more than one year, exclusive of any waivers or periods of deferral, shall be reinstated or readmitted only upon order of the court. No lawyer may petition for reinstatement until six months before the period of suspension has expired. No lawyer may petition for readmission until five years after the effective date of disbarment. A lawyer who has been placed on interim suspension and is then disbarred for the same misconduct that was the ground for the interim suspension may petition for readmission at the expiration of five years from the time of the effective date of the interim suspension. The court retains the discretion, in accordance with Section 10A of this rule, to permanently disbar a lawyer and permanently prohibit any such lawyer from being readmitted to the practice of law.

. Similar orders were issued in In re: Gros, 98-B-0772 (La. 3/15/02), 815 So.2d 799, and In re: Parker, 00-B-3532 (La. 3/15/02), 815 So.2d 794. We address those cases in separate opinions rendered this day.

. It is noteworthy that at the time we considered the charges forming the basis of respondent's 1999 disbarment, he had already been placed on interim suspension for the instant charges.

.Our decision should not be interpreted as espousing the position advanced by the amici in this case that the date of the misconduct determines whether the permanent disbarment rules should be applied. As noted above, we expressly decline to resolve that issue, and nothing in this opinion should be interpreted as passing on whether we could or could not impose permanent disbarment under these facts.