*297 ATTORNEY DISCIPLINARY PROCEEDINGS
hPER CURIAM.
This attorney disciplinary proceeding arises from five counts of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Edward L. Henderson, an attorney licensed to practice law in the State of Louisiana, but currently suspended by judgment of this court in In re: Henderson, 99-3593 (La.5/26/00), 761 So.2d 523 (“Henderson I”).[1]
*298 UNDERLYING FACTS

Count I

In November 1992, Margaret Mills retained respondent to represent her in a wrongful death/medical malpractice case arising out of the stillbirth of her child on October 3, 1992. On October 27, 1993, over one year after the alleged malpractice occurred, respondent instituted suit on behalf of his client. The suit was eventually dismissed on an exception of prescription.
After the suit was dismissed, respondent provided her with a check in the amount of $500, which he characterized as an advance payment of a “settlement” in the case.[2] Thereafter, respondent delivered a $9,000 check to Ms." Mills. At that time, |gshe signed a release presented to her by respondent, which released the defendants in the dismissed lawsuit and respondent from any liability for his malpractice in the case. Respondent failed to advise Ms. Mills to seek independent counsel prior to executing the release.
The ODC alleges that respondent’s conduct in this matter violates the following provisions of the Rules of Professional Conduct: Rule 1.2(a) (exceeding scope of representation), Rule 1.3 (neglect of legal matters), Rule 1.4 (failure to communicate), Rule 1.7(b) (engaging in a conflict of interest), Rule 1.8(h) (making an agreement prospectively limiting lawyer’s malpractice liability), Rule 8.4(a) (violating or attempting to violate the Rules of Professional Conduct), Rule 8.4(b) (commission of a criminal act adversely reflecting on a lawyer’s honesty, trustworthiness, or fitness as a lawyer) and Rule 8.4(c) (engaging in conduct involving deceit, dishonesty, fraud, or misrepresentation).

Count II

On May 11, 1999, respondent issued a check in the amount of $600 to Dr. Douglas Brown for medical services rendered to respondent’s client, James Cooper, in connection with a personal injury matter. The check, which was drawn on respondent’s client trust account, was returned to Dr. Brown for insufficient funds. Shortly thereafter, Dr. Brown reported the matter to the Ouachita Parish District Attorney’s Office and to the ODC. Respondent ultimately provided restitution to Dr. Brown, but did not do so until six weeks after Dr. Brown filed a complaint with the ODC.
| jjThe ODC alleges respondent’s actions violate Rule 8.4(b) (commission of a criminal act adversely reflecting on a lawyer’s honesty, trustworthiness, or fitness as a lawyer) and Rule 8.4(c) (engaging in conduct involving deceit, dishonesty, fraud, or misrepresentation).

Count III

In connection with its investigation of Dr. Brown’s complaint (which forms the basis of Count II), the ODC issued a subpoena to respondent, requesting he appear for deposition and produce financial documents. Respondent appeared for deposition, but failed to produce the requested documents.
The ODC alleges respondent’s actions violated Rule 3.4(c) (failure to comply with tribunal orders), Rule 8.1(b) (failure to respond to a lawful demand for information from a disciplinary authority), Rule 8.1(c) (failure to cooperate with the ODC in its investigation), Rule 8.4(a) (violating or attempting to violate the Rules of Profes *299 sional Conduct), 8.4(d) (engaging in conduct prejudicial to the administration of justice) and Rule 8.4(g) (failure to cooperate with the ODC), as well as Supreme Court Rule XIX, § 9(c) (knowing failure to respond to a lawful demand from a disciplinary authority).

Count IV

In July 1994, Beatrice Spivey retained respondent to represent her in a personal injury matter. Less than one year later, respondent settled the case on behalf of Ms. Spivey for $8,200. On March 27, 1995, respondent provided an accounting and disbursed $3,224.02 to her. Respondent retained $615.97 of the settlement to pay third-party medical providers who rendered services to Ms. Spivey. However, | ¿respondent failed to pay the third party medical providers, and instead commingled and converted the funds to his own use.
During its investigation of this matter, the ODC issued a subpoena to respondent, compelling his appearance for deposition and requesting production of certain financial records. While respondent appeared for the deposition, he failed to produce the requested documents. At the deposition, respondent agreed to produce the financial documents, but subsequently failed to do so.
The ODC alleges respondent’s actions violated Rule 3.4(c) (failure to comply with tribunal orders), Rule 8.1(b) (failure to respond to a lawful demand for information from a disciplinary authority), Rule 8.1(c) (failure to cooperate with the ODC in its investigation), Rule 8.4(a) (violating or attempting to violate the Rules of Professional Conduct), 8.4(d) (engaging in conduct prejudicial to the administration of justice) and Rule 8.4(g) (failure to cooperate with the ODC), as well as Supreme Court Rule XIX, § 9(c) (knowing failure to respond to a lawful demand from a disciplinary authority).

Count V

On December 2, 1999, respondent registered for a continuing legal education program sponsored by the Center of Continuing Professional Development at Louisiana State University (“LSU”) Law Center. At that time, respondent tendered payment with a check in the amount of $335 drawn on his attorney at law account.[3] Subsequently, respondent’s bank dishonored the check due to insufficient funds. Between January and April 2000, Glynn P. Pelleg-rin, Director of the Center of ^Continuing Professional Development at LSU Law Center, made numerous formal requests for payment, but to no avail.
On May 3, 2000, Mr. Pellegrin filed a complaint with the ODC. On August 21, 2000, respondent, through counsel, provided restitution to the LSU Law Center.
The ODC alleges respondent’s actions violate Rule 8.4(b) (commission of a criminal act adversely reflecting on a lawyer’s honesty, trustworthiness, or fitness as a lawyer).
DISCIPLINARY PROCEEDINGS

Formal Charges

After investigation, the ODC filed formal charges against respondent. Respondent filed an answer to the formal charges. Accordingly, the matter was set for a formal hearing before the committee.

Hearing Committee Recommendation

As to the Mills matter, the hearing committee made a finding of fact that respondent failed to file suit timely. Based on *300 this finding, it concluded that respondent failed to provide competent representation or act with diligence and promptness in representing Ms. Mills. However, the committee found no clear and convincing evidence that respondent concealed the late filing of the suit from Ms. Mills. In support, the committee observed that Ms. Mills had testified at the hearing on the exception of prescription. Finally, the committee determined that respondent improperly settled his malpractice liability and failed to advise Ms. Mills to seek independent counsel.[4]
|fiIn the Brown matter, the committee determined the ODC proved by clear and convincing evidence that respondent issued a $600 N.S.F. check to Dr. Brown and did not make good on the check until after the matter had been reported to the district attorney’s office. The committee also determined respondent failed to cooperate in the disciplinary investigation, because he did not produce the requested records.
Regarding the Spivey matter, the committee found the ODC proved by clear and convincing evidence that respondent failed to disburse funds to third party medical providers. However, the committee noted that respondent’s conduct may have been more negligent than intentional. In support, it observed because of respondent’s incomplete records and inattentiveness to these matters, he may have been unaware the third party providers were not paid. The committee farther found respondent failed to cooperate in the ODC’s investigation of this matter.
As to the final count relating to the LSU matter, the committee recognized that respondent testified he believed there were sufficient funds in the account to cover the check at the time it was tendered. Nonetheless, it determined the ODC proved by clear and convincing evidence that at the time respondent wrote the check, there were insufficient funds in his account to cover it.
In addressing sanctions, the committee concluded the baseline sanction for respondent’s misconduct was disbarment. As aggravating factors, it recognized respondent’s prior discipline, selfish and dishonest motive, pattern of misconduct, multiple offenses, obstruction of the disciplinary process, refusal to acknowledge the wrongful nature of his conduct, and substantial experience in the practice of law |7(admitted 1981). In mitigation, the committee noted respondent’s partial restitution, personal problems (including financial hardship), and perhaps the lack of knowledge that the third party medical providers had not been paid.
Based on these factors, the committee recommended that respondent be suspended from the practice of law for a period of three years, with the suspension to run consecutively to respondent’s earlier suspension in Henderson I. The committee further recommended that the third year of the suspension be deferred, subject to the conditions that respondent make restitution to the third party health care providers, obtain additional continuing legal education, and comply with various supervision and reporting requirements.
*301 The ODC filed an objection to the leniency of the hearing committee’s proposed sanction.

Disciplinary Board Recommendation

The disciplinary board concluded the record supported the factual findings of the hearing committee in all respects. However, the disciplinary board determined the committee erred as a matter of law in deviating from the baseline sanction of disbarment. Given the multiple violations and the numerous aggravating factors, the board recommended that respondent be disbarred from the practice of law and ordered to make full restitution to the third party medical providers.
Neither respondent nor the ODC filed an objection in this court to the recommendation of the disciplinary board.
DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an | ¡independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
Based on our review, we conclude the record supports the committee’s factual findings. The record clearly demonstrates that respondent neglected Ms. Mills’ legal matter, allowing it to prescribe. Respondent then created a conflict of interest by attempting to settle his liability for legal malpractice without advising his client to seek the advice of independent counsel prior to entering into the settlement. In the Brown and LSU matters, respondent issued checks which were subsequently dishonored for insufficient funds, and did not make good on the checks in a prompt manner. In the Spivey matter, respondent failed to pay thirds party medical providers from settlement funds as he promised to do, and commingled and converted these funds to his own use. Finally, respondent failed to cooperate with the ODC in its investigation of the Brown and Spivey matters.
Having found violations of the Rules of Professional Conduct, we now turn to a determination of an appropriate sanction for this misconduct. The purpose of disciplinary proceedings is not primarily to punish the lawyer, but rather to maintain the appropriate standards of professional conduct, to preserve the integrity of the legal profession and to deter other lawyers from engaging in violations of the standards of the profession. In re: Vaughan, 00-1892 (La.10/27/00), 772 So.2d 87; In re: Lain, 00-0148 (La.5/26/00), 760 So.2d 1152; Louisiana State Bar Ass’n v. Levy, 400 So.2d 1355 (La.1981). The discipline to be imposed depends upon the facts of each case hand the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. In re: Redd, 95-1472 (La.9/15/95), 660 So.2d 839; Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Respondent’s misconduct is serious in nature and has caused actual harm. He deprived Ms. Mills of the opportunity to determine whether his offer to settle his legal malpractice liability was adequate under the facts. By failing to disburse funds *302 to the third party medical providers, he has deprived these providers of their funds for an extended period of time. Respondent’s issuance of dishonored checks in the Brown and LSU matters required Dr. Brown and LSU to undergo the additional time and expense to obtain their money. His failure to cooperate with the ODC resulted in the delay of these proceedings, and required the ODC to expend additional resources and time. Given the actual harm visited by respondent on both clients and third parties in this case, the baseline sanction is unquestionably disbarment. See, e.g., In re: Gros, 97-1295 (La.9/24/97), 699 So.2d 384.
As aggravating factors, we recognize respondent’s prior discipline in Henderson I, his substantial experience in the practice of law, a pattern of misconduct and multiple offenses. We are unable to find any mitigating factors from the record.[5]
Under these facts, we see no basis to deviate from the baseline sanction of disbarment. Accordingly, we will disbar respondent from the practice of law in the State of Louisiana.
ImDECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is the decision of this court that the recommendation of the disciplinary board be accepted. Accordingly, it is ordered that the name of Edward L. Henderson be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. Respondent is ordered to provide restitution to his victims. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. In Henderson I, respondent was suspended from the practice of law for a period of eighteen months for failing to maintain settlement funds in a trust account, failing to remit payment to a third-party health care provider, failing to cooperate in a disciplinary matter *298 and commingling and conversion of client funds. Respondent has not sought reinstatement from that suspension.

. This check was returned by the bank for insufficient funds. Respondent ultimately made good on the check, after Ms. Mills notified the Winn Parish District Attorney's Office regarding the matter.

. While the record makes reference to respondent's "attorney at law account,” it appears to have been utilized as his operating account, although it is not specifically designated as such.

. Respondent testified that in connection with the underlying suit in the Mills matter, a representative of an insurer informed him that the insurer was willing to settle the case for $10,000 as "nuisance value.” Therefore, respondent testified he considered the $9,000 as an "advance” on this settlement, with the understanding that it would be respondent's loss if he were unable to get the money back from the insurer. The committee also heard testimony from the attorney who represented the defendant physician. That attorney testified no offer of settlement was ever made. In light of this testimony, the committee found respondent’s testimony was "at best inconsistent and at worst, intentionally misleading.”

. While the committee found partial restitution as a mitigating factor, we note that restitution was not paid until after the affected parties filed disciplinary complaints or sought assistance from the district attorney. Likewise, we find no evidence in the record (other than respondent’s self-serving statements) to support his claim of personal problems.